VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-288



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2026

| | |
|---|---|
| Michael J. Gosselin Rentals II LLC\* v.<br>East Shore Drive Properties, LLC | }   APPEALED FROM:<br>}<br>}   Superior Court, Franklin Unit,<br>}   Civil Division<br>}   CASE NO. 25-CV-00092<br>    Trial Judge: Samuel Hoar, Jr. |

In the above-entitled cause, the Clerk will enter:

Plaintiff Michael J. Gosselin Rentals II LLC (MJGR) appeals from the dismissal of its complaint in this real property dispute. The court concluded that MJGR failed to state a claim upon which relief could be granted. We affirm.

MJGR filed this complaint in January 2025, seeking to quiet title to lakefront property that it claimed to own. MJGR sought a declaration that it was the rightful owner of the subject property, and asked the court to include in a declaratory judgment order that the right-of-way benefitting defendant and other property owners was "limited to pedestrian access, and preclude[d] use of the property for parking, installing docks, launching boats or for any other purpose that [sic] accessing the lake and beach by foot."

Defendant moved to dismiss MJGR's complaint. It argued that MJGR possessed only "beach rights and privileges" under the plain language of the relevant deeds. With respect to MJGR's request that the court limit access to the property, defendant noted that MJGR failed to join in its suit other neighbors who held deeded interests in the lot in question. Thus, to the extent that any of MJGR's claims survived the motion to dismiss, defendant asked the court to order that all parties who enjoyed rights over the disputed parcel be joined as necessary parties.

In a July 2025 order, the court granted defendant's motion to dismiss for failure to state a claim. The court explained that MJGR's claim rose and fell on the interpretation of the deeds in its chain of title. MJGR attached a deed and corrective deed to its complaint that conveyed fee interests in two parcels, neither of which addressed the property at issue here. The deed that did concern the subject property provided:

Also conveyed herewith by quit claim only are all beach rights and privileges the Granter [sic] may have in and to the shores and waters of Lake Champlain, including those rights and privileges conveyed to Gordon Marquette and Alma G. Marquette by Quit Claim Deed of Kenneth B. Cantell and Bernice E. Cantell dated October 2, 1975 and recorded in . . . the Land Records of the Town of St. Albans.

The court found this language clearly conveyed only beach rights and privileges, not fee title as MJGR claimed.

The court rejected MJGR's assertion that the reference to the 1975 deed in its chain of title—the Cantell-Marquette deed—demonstrated that it held a fee interest in the subject property. The 1975 deed stated in full:

KNOW ALL MEN BY THESE PRESENTS: THAT we, Kenneth B. Cantell and Bernice E. Cantell, husband and wife of St. Albans, in the County of Franklin and State of Vermont Grantors, in the consideration of one and more Dollars paid to our full satisfaction by Gordon E. Marquette and Alma G. Marquette, husband and wife, as tenants by the entirety of St. Albans, in the County of Franklin and State of Vermont Grantees, have REMISED, RELEASED; AND FOREVER QUIT CLAIMED unto the said Gordon E. Marquette and Alma G. Marquette, husband and wife, as tenants by the entirety, [and] their heirs or assigns, all right and title which we, Kenneth B. Cantell and Bernice E. Cantell or our heirs have in and to a certain piece of land in St. Albans Town in the County of Franklin and State of Vermont, described as follows, viz; Being and meaning a grant of beach rights in common with others to be exercised on a certain lot owned by the grantors for this purpose. Said beach and lake shore rights pertain to a certain lot owned by the grantors, said lot being situated diagonally across a certain camp road right-of-way from land and premises owned by the grantees. Said lot is approximately seventy-eight (78) feet wide along the aforementioned right-of-way, seventy-four (74) feet deep on the northern boundary, ninety-four (94) feet deep on the southern boundary and approximately seventy-eight (78) feet wide at the shore line. Said lot is bounded generally as follows; on the north by land and premises now or formerly owned by one Paquin; on the south by one Boudreau; on the west by the aforementioned camp road right-of-way; on the east by Lake Champlain. It is intended by this herein instrument to confirm the grant of beach rights and lake shore rights which have been exercised by the grantees coincidentally with the ownership of a certain lot deeded to Gordon E. Marquette and Anita Marquette by Warranty deed of Kenneth B. Cantell and Bernice E. Cantell, dated October 3, 1957 said deed being on record at Book 22, page 372 of the Land Records of the Town of St. Albans, Vermont.

TO HAVE AND TO HOLD all right and title in and to said quitclaimed premises, with the appurtenances thereof, to the said Gordon E. Marquette and Alma G. Marquette, husband and wife, as tenants by the entirety, and their heirs and assigns forever.

AND FURTHERMORE we the said Kenneth B. Cantell and Bernice E. Cantell, do for ourselves and our heirs, executors and administrators, covenant with the said Gordon E. Marquette and Alma G. Marquette, and their heirs and assigns, that from and after the ensealing of these presents we the said Kenneth B. Cantell and Bernice E. Cantell will have and claim no right in or to the said quit-claimed premises.

(Emphasis added.)

MJGR argued that by disclaiming any "right in or to the said quit-claimed premises," the grantors conveyed a fee interest in the parcel that was servient to that easement.

The court found this position refuted by the plain language of the deed. It recognized that:

[I]n interpreting a deed, [courts] look to the language of the written instrument because it is assumed to declare the intent of the parties. Our master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement. We read the entire written instrument as a whole, giving effect to every part so as to understand the words in the context of the full deed. In so doing, we construe the various clauses of the document, wherever possible, so that the deed has a consistent, or harmonious, meaning.

Kipp v. Chips Est., 169 Vt. 102, 105 (1999) (quotations and citations omitted).

The court found that MJGR's proposed interpretation would effectively read the two middle paragraphs out of the 1975 deed. Its interpretation relied upon an impermissibly narrow definition of the word "premises" that was at odds with the parties' clearly expressed intent. The court explained that the second paragraph of the deed stated clearly that the "piece of land" conveyed was "a grant of beach rights" and these rights "pertain[ed] to a certain lot owned by the grantors." Lest there be any confusion in this regard, the third paragraph made clear: "It is intended by this herein instrument to confirm the grant of beach rights and lake shore rights which have been exercised by the grantees . . . ."

The court determined that there was but one way to interpret the deed that yielded a "consistent, harmonious meaning" that gave "effect to every part." The term "premises" could mean only "the subject of the conveyance," here, "a grant of beach rights." The court found the grantors' intent to retain ownership of the underlying servient estate equally clear from the reference to the lot "owned by the grantors"—not "formerly" or "heretofore"—but owned without qualification, as a present and continuing condition.

3

The court therefore concluded that MJGR's deed was clear and unambiguous: with respect to the subject property, it conveyed only "beach rights and privileges." The source deed from which MJGR's rights flowed was equally clear and unambiguous: it too conveyed only "a grant of beach rights." The court noted that even assuming arguendo that there was any ambiguity in this regard, such ambiguity was conclusively resolved by the subsequent conduct of the parties to the Cantell-Marquette deed. One day after the Cantell-Marquette conveyance, the Marquettes executed a deed in favor of Edward Hlusko in which, with respect to the subject property, the Marquettes conveyed only "all rights and interest which they may have to the aforementioned beach rights and privileges arising from [the Cantell-to-Marquette deed]." The court found it apparent that the parties to MJGR's source deed understood that the Cantells conveyed to the Marquettes only "beach rights."

The court thus concluded that MJGR had no fee title rights in the subject property and its rights were limited to "beach rights in common with others." MJGR did not seek an adjudication of the scope of its beach rights. The court thus granted the motion to dismiss for failure to state a claim. It added that the dismissal was without prejudice to MJGR's right to seek an adjudication of the scope of its deeded beach rights, and the question of whether such an adjudication must include the "others" who evidently shared those rights was a matter for another day. MJGR now appeals.

We review the court's dismissal order de novo using "the same standard as the trial court." Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420. We "will uphold a motion to dismiss for failure to state a claim only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Id. (quotation omitted). "We assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences derived therefrom, and assume as false all contravening assertions in the defendant's pleadings." Id.

MJGR first argues that the court erred in dismissing its complaint for failure to state a claim. It contends that it advanced a plausible argument that it acquired fee ownership of the subject property and that the court improperly weighed the evidence in reaching its decision.

As set forth above, our "master rule" in construing a deed "is that the intent of the parties governs." Main St. Landing, LLC v. Lake St. Ass'n, 2006 VT 13, ¶ 7, 179 Vt. 583 (mem.) (citation omitted). In ascertaining intent, we must consider "the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." Id. "When the meaning of . . . a deed is clear and unambiguous, there is no room for construction and the instrument must be given effect according to its terms." Creed v. Clogston, 2004 VT 34, ¶ 13, 176 Vt. 436 (quotation omitted). "An ambiguity exists when a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Id. (quotation omitted); see also Trs. of Net Realty Holding Tr. v. AVCO Fin. Servs. of Barre, Inc., 144 Vt. 243, 248 (1984) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). "The proper construction of a deed is a question of law, which we review de novo." LeBlanc v. Snelgrove, 2015 VT 112, ¶ 30, 200 Vt. 570. The question of whether an ambiguity exists is also one of law that we review de novo. Kipp, 169 Vt. at 107.

The court did not err in dismissing MJGR's complaint here. The language of MJGR's deed and its source deed are plain and unambiguous. MJGR was granted only beach access rights in its deed, as was its predecessor-in-title. This interpretation of the 1975 deed gives meaning to all of the deed language, including the habendum, allowing it to be read as a

4

harmonious whole. There is no ambiguity and no "clear conflict," as MJGR asserts, between the granting and habendum clauses. As the trial court explained, MJGR's proposed construction would read out the critical provisions of the granting clause, and it is unreasonable as a matter of law. The deed describes the lot only in relation to the grant of beach rights where those rights will be exercised, contrary to MJGR's assertion otherwise. The deed plainly does not convey the lot to the grantees, as MJGR argues, and neither the trial court nor this Court has weighed the evidence in reaching this conclusion. Our conclusion is not undermined by the reference to "heirs and assigns" in the deed or by the statement that the Cantells will "claim no right" in what they have just conveyed to the Marquettes. Looking at the document as a whole, the parties' intent to convey beach rights only is clear. See Johnson v. Barden, 86 Vt. 19, 29 (1912) (recognizing that while "minor rules of construction are . . . given their due weight," it is "beyond question that the intention of the parties to a deed as gathered from the whole instrument must govern" and "[t]his rule, and no other, affords security and certainty in business transactions, whether or not they relate to real estate in whole or in part"). Indeed, the parties to the 1975 deed declared this expressly: "It is intended by this herein instrument to confirm the grant of beach rights and lake shore rights . . . ." A survey obtained by MJGR in 2024, and a sketch that appears to be from a lister's folder, do not and cannot vary the terms of this unambiguous deed.

MJGR next asserts that even if it possesses only easement rights in the property, the court should have addressed the scope of its easement rights. The court found that MJGR did not ask for this relief. Its claim for relief was premised on a finding that it held fee title to the subject property. MJGR fails to show that the court erred by failing to address this unraised claim. As the court explained, moreover, its dismissal order was without prejudice to MJGR's right to seek such relief in another case.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Christina E. Nolan, Associate Justice

_____
Michael P. Drescher, Associate Justice

5